**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Counsel for Plaintiff Allegheny County Employees' Retirement System*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,

Plaintiff,

v.

CORCEPT THERAPEUTICS INCORPORATED, JOSEPH K. BELANOFF, WILLIAM GUYER, GARY CHARLES ROBB, and SEAN MADUCK,

Defendants.

Case No. 3:26-cv-1525

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

CLASS ACTION

DEMAND FOR JURY TRIAL

Plaintiff Allegheny County Employees' Retirement System ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, inter alia, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Corcept Therapeutics Incorporated ("Corcept" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Corcept; and (d) other public information regarding the Company.

## I. INTRODUCTION

1. Plaintiff brings this securities class action on behalf of all persons or entities that purchased or otherwise acquired Corcept common stock between October 31, 2024, and December 30, 2025, inclusive (the "Class Period").

2. The claims asserted herein are alleged against Corcept and certain of the Company's senior officers (collectively, "Defendants") and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

3. Corcept is a pharmaceutical company focused on the development of medications to treat severe endocrinologic, oncologic, metabolic and neurologic disorders by modulating the effects of the hormone cortisol. One of its lead new product candidates is relacorilant, which is being developed for multiple indications, including as a treatment for patients with hypercortisolism (also known as "Cushing's syndrome").

4. Throughout the Class Period, Defendants represented that the key clinical trials supporting the use of relacorilant as treatment for patients with hypercortisolism were "powerful support" for the New Drug Application ("NDA") that Corcept submitted to the U.S. Food and Drug Administration ("FDA") for this indication. Defendants also stated that they had communicated with the FDA about this NDA and were confident in submitting the NDA, foreseeing no impediments to approval. Toward the latter part of the Class Period, Defendants

repeatedly told investors that "relacorilant is approaching approval." As a result of these representations, the price of Corcept common stock traded at artificially inflated prices throughout the Class Period.

5. Defendants' Class Period representations that the relacorilant NDA was supported by powerful evidence, that it was approaching approval, and that they had no concerns about the FDA's review were false. In truth, the FDA had repeatedly raised concerns about the adequacy of the clinical evidence supporting the NDA and, as a result, there was a known material risk that Corcept's relacorilant NDA would not be approved.

6. The truth emerged on December 31, 2025, when Corcept revealed that the FDA had issued a Complete Response Letter ("CRL") regarding the NDA for relacorilant as a treatment for patients with hypercortisolism. The press release issued by the Company stated that the FDA had "concluded it could not arrive at a favorable benefit-risk assessment for relacorilant without Corcept providing additional evidence of effectiveness." The press release quoted Defendant Belanoff as stating that "[w]e are surprised and disappointed by this outcome." As a result of this disclosure, the price of Corcept common stock declined by $35.40 per share, or 50.4%.

7. Then, after the end of the Class Period, on January 30, 2026, the FDA published a redacted copy of the CRL. The CRL detailed the FDA's concerns with the relacorilant NDA, including concerns that the clinical studies that were submitted as part of the NDA were not sufficient evidence of relacorilant's efficacy for the proposed indication. The CRL also noted that, during pre-submission meetings, the FDA informed Corcept "on several occasions" of its "concerns about the adequacy of the clinical development program," and had warned the Company "to expect significant review issues," if it submitted the application.

8. As a result of Defendants' actions detailed herein, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## II. JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

10. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Corcept's principal executive office is located in Redwood City, California, which is situated in this District, and many of the acts giving rise to the violations complained of in this action, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District.

12. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III. PARTIES

### A. Plaintiff

13. Plaintiff Allegheny County Employees' Retirement System is a single employer defined benefit, contributory retirement benefit plan covering substantially all employees of the County of Allegheny, Pennsylvania. As indicated in the certification submitted herewith, Plaintiff purchased Corcept common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B. Defendants

14. Defendant Corcept is a pharmaceutical company, and maintains its headquarters at 101 Redwood Shores Parkway, Redwood City, California. Corcept common stock trades on NASDAQ under the ticker symbol "CORT." As of October 23, 2025, Corcept had over 105 million shares of common stock outstanding, owned by thousands of investors.

15. Defendant Joseph K. Belanoff ("Belanoff") is, and was at all relevant times, Corcept's Chief Executive Officer and the President of the Company.

16. Defendant William Guyer ("Guyer") is, and was at all relevant times, Corcept's Chief Development Officer.

17. Defendant Gary Charles Robb ("Robb") is, and was at all relevant times, Corcept's Chief Business Officer and Secretary.

18. Defendant Sean Maduck ("Maduck") is, and was at all relevant times, the President of Corcept's Endocrinology division.

19. Defendants Belanoff, Guyer, Robb, and Maduck are collectively referred to herein as the "Officer Defendants." The Officer Defendants, because of their positions with Corcept, possessed the power and authority to control the contents of Corcept's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Officer Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Officer Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## IV. BACKGROUND

20. Corcept is a commercial-stage pharmaceutical company focused on the development of medications to treat severe endocrinologic, oncologic, metabolic and neurologic disorders by modulating the effects of the hormone cortisol. Since 2012, Corcept has marketed the drug Korlym for the treatment of patients suffering from hypercortisolism. While Korlym effectively treats hypercortisolism, its active ingredient, mifepristone, terminates pregnancies and causes other adverse effects, including endometrial thickening and vaginal bleeding.

21. Corcept developed its new proprietary cortisol modulator, relacorilant, to treat hypercortisolism (among other indications) without causing the side effects associated with Korlym. Prior to the start of the Class Period, Corcept had completed two Phase 3 clinical trials of relacorilant in patients with hypercortisolism, its pivotal trial "GRACE" and its "GRADIENT" trial, and was preparing to submit an NDA to the FDA for approval of relacorilant for this indication.

## V. DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

22. The Class Period begins October 31, 2024, the day after the release of Corcept's results for the third quarter of 2024 and the associated earnings call, which was held after the market closed on October 30, 2024. During the earnings call, Defendant Belanoff told investors that the "results from our GRACE and GRADIENT Phase 3 studies clear the path for relacorilant's new drug application in Cushing's syndrome, which we will submit by year-end." He further represented that the outcomes of the GRACE study "would, on their own, provide powerful evidence for our NDA, but they do not stand on their own," and continued that "GRADIENT's data will support our NDA by providing further evidence of relacorilant's efficacy and safety, confirming what we found in GRACE."

23. During the same presentation, Defendant Guyer told investors that "we're very confident with submitting an NDA based upon the GRADIENT data," but that "GRADIENT, from its inception, was always designed to be supportive of GRACE and GRACE was always going to be our pivotal study and that's our agreement with the FDA." He assured investors that "when you look at the totality of evidence that we see from all of these studies, we believe we have a successful path to a positive NDA for relacorilant that will happen in the coming weeks."

24. On this call, Defendant Robb spoke about the pre-submission discussions the Company had had with FDA concerning the relacorilant NDA, claiming that "the FDA has made it clear that a single well-controlled study, which we have in the form of our GRACE and the data from GRACE, along with confirmatory evidence, is sufficient to demonstrate a drug safety and

efficacy." Defendant Robb further assured investors of "what a good position we're in" with regards to the NDA, claiming that "[i]t's that easy an argument to present to the FDA." Defendant Belanoff similarly commented on Corcept's communications with the FDA, telling investors that "we've talked to the FDA plenty about this program, about all of our programs, and I foresee absolutely no impediments to getting our NDA in."

25. On December 30, 2024, Corcept announced that it had submitted its NDA for relacorilant as a treatment of endogenous hypercortisolism. The Company's press release stated "Corcept's NDA is based on positive results from the pivotal GRACE trial and confirmatory evidence from the Phase 3 GRADIENT and long-term extension studies and a Phase 2 study in hypercortisolism." It continued that patients in those clinical trials "experienced improvements in a wide array of hypercortisolism's signs and symptoms, with an acceptable safety burden." The press release also quoted Defendant Belanoff as saying "Relacorilant's combination of efficacy and safety give it the potential to become the standard of care for the medical treatment of patients with hypercortisolism."

26. On February 26, 2025, Corcept released its financial results for the fourth quarter of 2024 and held an earnings call to discuss these results with analysts and investors. During that earnings call, Defendant Belanoff stated that the "positive results from our GRACE, GRADIENT long term extension and Phase 2 studies provide powerful support for successful relacorilant NDA in hypercortisolism."

27. Then, on May 5, 2025, Corcept released its financial results for the first quarter of 2025 and held an earnings call to discuss those results with analysts and investors. During that earnings call, Defendant Belanoff stated that the NDA "is currently under review with an FDA action date of December 30, 2025," and that it "is progressing towards approval by the end of this year." Defendant Maduck quantified the expected benefits from this supposedly anticipated approval, telling investors that "I believe that in the next three to five years, relacorilant will generate $3 billion to $5 billion in annual revenue in hypercortisolism alone."

28. On July 31, 2025, Corcept released its financial results for the second quarter of 2025 and held an earnings call to discuss these results with analysts and investors. During that earnings call, Defendant Maduck again told investors that "in the next three to five years, relacorilant will generate $3 billion to $5 billion in annual revenue in hypercortisolism alone," while Defendant Belanoff stated that "relacorilant is approaching approval," and "[w]e expect its approval in hypercortisolism by the end of this year."

29. On November 4, 2025, Corcept released its financial results for the third quarter of 2025, and held an earnings call to discuss these results with analysts and investors. During that call, Defendant Maduck stated that "I eagerly anticipate relacorilant's approval," and again reiterated that "[i]n the next three to five years, I believe relacorilant will generate $3 billion to $5 billion in annual revenue in hypercortisolism alone." Defendant Belanoff also assured investors that "[n]ext month, we expect FDA approval of relacorilant for the treatment of hypercortisolism."

30. The statements in paragraphs 22-29 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading. In truth, the FDA had told Corcept that it had concerns about the adequacy of the program assessing relacorilant's effectiveness in treating hypertension in patients with hypercortisolism, including the design of the GRACE study. The FDA had further told Corcept to expect significant issues with the review if Corcept was to submit the NDA. As a result, Defendants' positive statements concerning their interactions with the FDA and their expectations that the relacorilant NDA would be approved, were materially false or misleading.

## VI. THE TRUTH EMERGES

31. On December 31, 2025, Corcept revealed that the FDA had issued a CRL regarding the NDA for relacorilant as a treatment for patients with hypertension secondary to

hypercortisolism.[1] Specifically, the Company stated that "the [FDA] concluded it could not arrive at a favorable benefit-risk assessment for relacorilant without Corcept providing additional evidence of effectiveness." In the press release announcing that it had received the CRL, Defendant Belanoff is quoted stating that "[w]e are surprised and disappointed by this outcome." This disclosure caused the price of Corcept common stock to decline by $35.40 per share, or 50.4%, from a closing price of $70.20 on December 30, 2025, to a closing price of $34.80 on December 31, 2025.

## VII. POST-CLASS PERIOD EVENTS

32. Following the end of the Class Period, on January 30, 2026, the FDA published a redacted copy of the CRL. The CRL confirmed that the FDA had "determined that we cannot approve this application in its present form," and detailed the reasons for that determination. This included an explanation of why the FDA found that the evidence from the GRACE and GRADIENT studies was "not sufficient to demonstrate the effectiveness of relacorilant for the proposed indication."

33. The CRL also revealed that Corcept was expressly warned by FDA of issues with the adequacy of its trials, stating, in relevant part: "During the pre-submission meetings, we informed you on several occasions of our concerns about the adequacy of the clinical development program to assess the effect of relacorilant on hypertension in the intended population including the design of [the GRACE study], and to expect significant review issues if you were to submit your application."

## VIII. LOSS CAUSATION

34. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. These misleading statements and omissions artificially inflated the price of Corcept common stock and

[1] This is the first time that the relacorilant NDA's indication was said to be for hypertension secondary to hypercortisolism, rather than for treatment of endogenous hypercortisolism. The slight narrowing of the indication appears to have occurred during the FDA's review process, but was not disclosed by Corcept prior to December 31, 2025.

operated as a fraud or deceit on the Class (as defined below). Later, when the alleged misrepresentations and fraudulent conduct were disclosed to the market on December 31, 2025, the price of Corcept common stock fell precipitously as the prior artificial inflation came out of the price over time. As a result of their purchases of Corcept common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## IX. CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired Corcept common stock during the Class Period (collectively, the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of Corcept and their families and affiliates.

36. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of October 23, 2025, Corcept had over 105 million shares of common stock outstanding, owned by thousands of investors.

37. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether Defendants violated the Exchange Act;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether the Officer Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e) Whether the Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f) Whether Defendants' conduct impacted the price of Corcept common stock;

(g) Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h) The extent of damage sustained by Class members and the appropriate measure of damages.

38. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

39. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

## X. INAPPLICABILITY OF STATUTORY SAFE HARBOR

41. Corcept's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

42. The Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Corcept who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## XI. PRESUMPTION OF RELIANCE

43. At all relevant times, the market for Corcept common stock was an efficient market for the following reasons, among others:

(a) Corcept common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Corcept filed periodic public reports with the SEC and NASDAQ;

(c) Corcept regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Corcept was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

44. As a result of the foregoing, the market for Corcept common stock promptly digested current information regarding Corcept from all publicly available sources and reflected such information in the price of Corcept common stock. Under these circumstances, all purchasers of Corcept common stock during the Class Period suffered similar injury through their purchase of Corcept common stock at artificially inflated prices and the presumption of reliance applies.

45. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding Corcept's business operations—information that Defendants were obligated to disclose—positive proof of reliance is

not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the significance of the relacorilant NDA, that requirement is satisfied here.

## XII. SCIENTER ALLEGATIONS

46. As alleged herein, the Defendants acted with scienter since the Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Numerous facts including those detailed below, considered collectively, demonstrate that Defendants knew or recklessly disregarded that they were misrepresenting the prospects of the relacorilant NDA being approved.

47. First, the Complete Response Letter establishes that Defendants knew about the FDA's concerns with the relacorilant NDA from the beginning of the Class Period, as the FDA informed Corcept of these concerns "on several occasions" during the pre-submission meetings.

48. Second, the relacorilant NDA was crucial to Corcept's business, as the Defendants spoke about it on every conference call with investors, repeatedly emphasized its importance as the next generation of the Company's medication treating hypercortisolism, and professed a deep understanding about the requirements for the NDA to be approved. Defendants repeatedly stated that they expected sales of relacorilant for treatment of hypercortisolism to generate $3 billion to $5 billion in annual revenue in the next 3 to 5 years, which is multiples larger than the Company's revenue guidance for 2025 of $800-850 million.

49. Third, capitalizing on Corcept's inflated stock price, Corcept's senior executives reaped massive personal financial gains by selling over $97 million worth of their personally held Corcept shares during the Class Period. Specifically, Defendant Belanoff sold over $25 million of his personally held shares at the same time that Defendants were issuing materially false and misleading statements and omissions to investors. Similarly, Defendant Maduck sold over $27

million of his personally held shares and Defendant Guyer sold over $15 million of his personally held shares during the Class Period. These sales were suspiciously timed and comprised a material departure from the three Defendants' trading behavior in the period directly preceding the Class Period.

50. Collectively, these facts give rise to a strong inference of scienter.

## XIII. CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5**

**(Against All Defendants)**

51. Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

52. During the Class Period, the Defendants carried out a plan, scheme, and course of conduct which intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (b) cause Plaintiff and other members of the Class to purchase Corcept common stock at artificially inflated prices.

53. The Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. The Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the U.S. mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

55. During the Class Period, the Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained

misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56. The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them. The Defendants engaged in this misconduct to conceal Corcept's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

57. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they purchased Corcept common stock at artificially inflated prices and were harmed when the truth about Corcept negatively impacted the price of the Company's common stock. Plaintiff and the Class would not have purchased Corcept common stock at the prices they paid, or at all, had they been aware that the market prices for Corcept common stock had been artificially inflated by the Defendants' fraudulent course of conduct.

58. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

59. By virtue of the foregoing, the Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act**

**(Against the Officer Defendants)**

60. Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

61. The Officer Defendants acted as controlling persons of Corcept within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and intimate knowledge of the Company's actual performance, and their power to control public statements about Corcept, the Officer Defendants had the power and ability to

control the actions of Corcept and its employees. By reason of this conduct, the Officer Defendants are liable under Section 20(a) of the Exchange Act.

## XIV. PRAYER FOR RELIEF

62. WHEREFORE, Plaintiff prays for judgment as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensation to Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d) Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XV. JURY DEMAND

63. Plaintiff demands a trial by jury.

DATED: February 20, 2026

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

-and-

HANNAH ROSS
(hannah@blbglaw.com)
SCOTT R. FOGLIETTA
(scott.foglietta@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

Fax: (212) 554-1444

*Counsel for Plaintiff Allegheny County Employees' Retirement System*

**CERTIFICATION PURSUANT TO**
**THE FEDERAL SECURITIES LAWS**

I, Walter Szymanski, on behalf of Allegheny County Employees' Retirement System ("ACERS"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Director of ACERS. I am fully authorized to enter into and execute this Certification on behalf of ACERS. I have reviewed the complaint and authorize its filing.

2. ACERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. ACERS is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. ACERS's transactions in the Corcept Therapeutics Incorporated securities that are the subject of this action are set forth in the chart attached hereto.

5. ACERS has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

*In re Zeta Global Holdings Corp. Securities Litigation*, No. 24-cv-8961 (S.D.N.Y.)
*In re AdaptHealth Corp. Securities Litigation*, No. 23-cv-4104 (E.D. Pa.)

6. ACERS has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for appointment as lead plaintiff or was not appointed lead plaintiff:

*Salem v. Methode Electronics, Inc.*, No. 24-cv-7696 (N.D. Ill.)

7. ACERS will not accept any payment for serving as a representative party on behalf of the class beyond ACERS's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19 day of February, 2026.

Walter Szymanski, Director
*Allegheny County Employees' Retirement System*

**Allegheny County Employees' Retirement System**
**Transactions in Corcept Therapeutics Incorporated**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 3/11/2025 | 472 | 55.6556 |
| Purchase | 3/31/2025 | 580 | 99.0215 |
| Purchase | 4/1/2025 | 298 | 94.6280 |
| Purchase | 4/2/2025 | 81 | 83.9895 |
| Purchase | 4/3/2025 | 121 | 81.7688 |
| Purchase | 4/8/2025 | 120 | 75.1188 |
| Purchase | 5/1/2025 | 354 | 71.7479 |
| Purchase | 5/15/2025 | 266 | 73.1322 |
| Purchase | 5/15/2025 | 349 | 72.9528 |
| Purchase | 11/3/2025 | 25 | 73.4108 |